IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| BARBARA BURGETT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-2967-STA-dkv |
| | ) | |
| J.C. PENNEY COMPANY, INC., | ) | |
| ASA CARLTON, INC., | ) | |
| RAFAEL ARREOLA, | ) | |
| LABOR READY CENTRAL, INC., | ) | |
| JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**
_____

Before the Court is Cross-Defendant Rafael Arreola's Motion to Dismiss Cross-Plaintiff J.C. Penney Company, Inc. ("J.C. Penney")'s Amended Cross-claim (D.E. # 28) filed on March 7, 2014. Cross-Plaintiff has filed a response in opposition to the Motion (D.E. # 37). For the reasons set forth below, the Motion is **DENIED**.

**BACKGROUND**

Plaintiff Barbara Burgett alleges that on April 11, 2013, she was shopping in the J.C. Penney's store at the Wolfchase Galleria Mall in Memphis, Tennessee, at a time while the store was undergoing a renovation. (Am. Compl. ¶¶ 23–24.) J.C. Penney's had contracted with Defendant ASA Carlton, Inc. ("ASA Carlton") to perform the construction, and Carlton had sub-contracted with Defendant Rafael Arreola ("Arreola") to perform a portion of the project. (*Id.* ¶¶ 17–18.) According

1

to the Amended Complaint, as Plaintiff was shopping in the J.C. Penney's store, building materials fell as a result of Defendants' negligence and struck her causing injuries. (*Id.* ¶ 25–27.)

On February 5, 2014, J.C. Penney's filed a Cross-claim against ASA Carlton and Arreola (D.E. # 15). The Cross-claim alleges that J.C. Penney and ASA Carlton were parties to a master services agreement ("the agreement") dated January 29, 2013, and that Arreola accepted the terms of the agreement when he subcontracted with ASA Carlton. (Cross-Claim ¶¶ 1, 2.) The agreement contained an indemnity clause in article 14 by which ASA Carlton agreed to "defend, indemnify, and hold harmless" J.C. Penney from all "liabilities, damages, settlements, and claims for damages." (*Id.* ¶ 3.) Article 14 of the agreement went on to provide a non-exhaustive list of claims covered by the indemnity clause, including "injury to or death of persons, or damage to or destruction of property, including property of Owner arising or resulting from the Work or from any actual or alleged acts, omissions, or negligence Contractor any Subcontractor or any Person performing any portion of the Work." (*Id.*) The agreement further required that ASA Carlton maintain liability insurance, which would cover its indemnity obligations under article 14, and would name J.C. Penney as an additional insured. (*Id.* ¶ 4.)

J.C. Penney alleges that the events described in Burgett's pleadings fall within the scope of the master services agreement, thereby entitling J.C. Penney to indemnification from ASA Carlton and Arreola (*Id.* ¶¶ 9, 10.) The Cross-Claim alleges that J.C. Penney tendered its defense to ASA Carlton and that ASA Carlton has not accepted the tender. (*Id.* ¶ 11.) Therefore, the Cross-Claim alleges that ASA Carlton and Arreola have breached the terms of the master services agreement. (*Id.* ¶ 12.)

In his Motion to Dismiss, Arreola argues that J.C. Penney's Cross-claim fails to state a claim

against him. J.C. Penney alleges that ASA Carlton, the general contractor, and Arreola, the subcontractor, have breached the master services agreement's indemnity clause. However, Arreola was not a party to the agreement. Even if Arreola was a party to the agreement, the indemnity clause is unenforceable under Tennessee law because the clause fails to clearly and unequivocally state that Arreola will indemnify J.C. Penney for its own negligence. Count XII of Burgett's Amended Complaint alleges that J.C. Penney is liable for its own acts of negligence, and not vicariously liable for the negligence of any other party. Under Tennessee law, an agreement to indemnify a party for its own negligence must state such an intent in clear and unequivocal terms. Article 14 of the agreement between J.C. Penney and ASA Carlton fails to state that ASA Carlton (or Arreola) agreed to indemnify J.C. Penney for its own negligence. Additionally, the indemnity clause is void and unenforceable under Tenn. Code Ann. § 62–6–123. That section provides that an indemnity provision in a contract for construction services is void and unenforceable. Arreola argues then that article 14 of the master services agreement falls within the scope of Tenn. Code Ann. § 62–6–123 and is void as a matter of law. Therefore, the Court should dismiss J.C. Penney's Cross-claim against Arreola for failure to state a claim.

In its response in opposition, J.C. Penney argues that Arreola's Motion to Dismiss should be denied. First, J.C. Penney asserts that Arreola bound himself by implication to the terms and conditions of the master services agreement when he entered into the subcontract with ASA Carlton. J.C. Penney adds that it believes discovery will show that Arreola expressly accepted the terms of the master services agreement in his subcontract with ASA Carlton. In the alternative, J.C. Penney contends that it was a third-beneficiary of the subcontract between Arreola and Carlton. J.C. Penney's goes on to argue that even if no express agreement for indemnity existed between J.C.

Penney and Arreola, Arreola would still be bound to indemnify J.C. Penney's under a theory of implied indemnity. As for the enforceability of any agreement to indemnify, J.C. Penney argues that Burgett has not alleged that J.C. Penney is liable for its own negligence but only vicariously liable for the negligence of Arreola and the other workers performing the renovation at the store in April 2013. As such, Tennessee law on indemnity clauses in construction contracts and the indemnification of a party for allegations about its own negligence is not at issue here. Therefore, the Motion to Dismiss should be denied.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party.[1] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[2] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[3] Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] Although this standard does not require "detailed factual allegations," it does

---

[1] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[2] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[3] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[4] Fed. R. Civ. P. 8(a)(2).

require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."⁵ In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."⁶ "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."⁷

## **ANALYSIS**

The issue presented is whether J.C. Penney Cross-claim states a claim for indemnity against Arreola. J.C. Penney alleges that it entered into a construction contract with ASA Carlton (Cross-claim ¶ 1) and that ASA Carlton then entered into a separate subcontract with Arreola. (*Id.* ¶ 2.) The pleadings are clear that Arreola was not a party to the master services agreement between J.C. Penney and ASA Carlton, though the Cross-claim does allege that Arreola "accepted the provisions of" the master services agreement as part of the subcontract. (*Id.*) Even accepting the well-pleaded fact allegations of the Cross-claim as true, the Court holds that the Cross-claim fails to state a claim for direct breach of contractual indemnification against Arreola. In order to state a claim for breach of contract under Tennessee law, J.C. Penney must allege (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages

---

⁵ *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

⁶ *Twombly*, 550 U.S. at 555, 570.

⁷ *Iqbal,* 556 U.S. at 678.

caused by the breach of the contract.[8]  The Cross-claim alleges that Arreola was not a party to the master services agreement but then alleges that Arreola has breached the master services agreement and damaged J.C. Penney.  The Cross-claim's failure to allege the existence of an enforceable contract between J.C. Penney and Arreola or that Arreola was a party to the master services agreement between J.C. Penney and ASA Carlton is fatal to the allegation that Arreola has breached the master services agreement.

In its briefing on the Motion to Dismiss, J.C. Penney argues alternative theories whereby Arreola might still have an obligation to indemnify J.C. Penney.  Specifically, J.C. Penney argues (1) that Arreola impliedly assumed an obligation to indemnify J.C. Penney by entering into the subcontract with ASA Carlton and (2) that J.C. Penney was a third-party beneficiary of Arreola's subcontract with ASA Carlton.[9]  With respect to the implied contract theory, the Cross-claim alleges no facts to show how an implied contract between Arreola and J.C. Penney incorporating the terms of the master services agreement would have arisen in this case.  Tennessee law recognizes two

---

[8] *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, LPIMC, Inc.*, 79 F.3d 496, 514 (6th Cir. 1996) (applying Tennessee law); *see also Tipton v. Sparta Water Co.*, 57 S.W.2d 793, 795 (Tenn. 1933) ("Privity of contract is an essential element to an action founded on a breach of contract.").

[9] The Court notes that the Cross-claim does not specifically plead these theories of relief. However, "the Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories." *E.g. E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 620 (6th Cir. 2013) (Carr, D.J., dissenting) (citing Wright et al., 5 Fed. Prac. & Proc. Civ., § 1219 (3d ed. 2012); *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007) ("Civil Rule 8 calls for a short and plain statement; the plaintiff pleads claims, not facts or legal theories."). In this case, J.C. Penney has raised its alternative theories in response to Arreola's Rule 12(b)(6) Motion to Dismiss, and Arreola has not exercised his right under the Local Rules of Court to file a reply brief, addressing the alternative theories.  Therefore, the Court will consider the merits of J.C. Penney's arguments. The Court would add that although not required under the Federal Rules, the better practice would be to allege theories such as third-party beneficiary status or implied contract clearly and unequivocally in the pleadings.

kinds of implied contracts: contracts implied in fact and contracts implied in law.[10] J.C. Penney contends that a contract implied in law was created between J.C. Penney and Arreola when Arreola subcontracted with ASA Carlton to perform part of the construction work at the J.C. Penney store. "Contracts implied in law or quasi contracts are created by law without the parties' assent and are based upon reason and justice."[11] Indemnification can be implied when such an obligation is a necessary element of the parties' relationship but only if the party from whom indemnification is sought breached a contract or engaged in some other related tortious conduct.[12] Tennessee case law suggests that "an implicit right of indemnification" is available only "where there is a direct contractual relationship" and "an obligation to indemnify for negligent conduct in the performance of the contract."[13] No such relationship existed between J.C. Penney and Arreola in this instance. Arreola further argues that even if such a contract was made by operation of law, the indemnity clause of the master services agreement is unenforceable.

The Court need not decide at this point whether the Cross-claim states a claim for breach of implied contract. The Court holds that the Cross-claim plausibly alleges that J.C. Penney was an intended third-party beneficiary of the subcontract between ASA Carlton and Arreola. Under Tennessee law, contracts are generally presumed to be executed for the benefit of the parties to the

---

[10] *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524-25 (Tenn. 2005).

[11] *Id.*

[12] *Lusk v. Jim Walter Homes, Inc.,* 648 S.W.2d 935, 939 (Tenn. 1983); *First Am. Bank v. Woods*, 734 S.W.2d 622, 632 (Tenn. Ct. App. 1987) (implied contractual indemnity based on negligence).

[13] *Woods*, 734 S.W.2d at 632 (citing *Lusk,* 648 S.W.2d at 939).

contract, not third parties.[14]  Put another way, "a stranger to a contract has no right to sue for its breach, but an intended third-party beneficiary may enforce a contract provided the benefit flowing from the contract to that party was intended, not merely incidental."[15]  In order to show that J.C. Penney is an intended third-party beneficiary, the Cross-claim must alleges facts showing (1) the existence of a valid subcontract between ASA Carlton and Arreola; and (2) that the clear intent of the subcontract was to benefit J.C. Penney.[16]

Construing the allegations of the Cross-claim in the light most favorable to J.C. Penney, the Court finds that J.C. Penney has pleaded enough factual matter to allege that it was a third-party beneficiary of the subcontract.  The Cross-claim alleges that ASA Carlton subcontracted with Arreola to perform a portion of the work at the J.C. Penney store.  The Cross-claim further alleges that as part of the subcontract, Arreola accepted the terms of the general contract, including the indemnity clause.  Although the Cross-claim does not recite the terms of the subcontract, the Cross-claim does include the general contract's indemnity clause.  According to the clause, ASA Carlton agreed to "defend, indemnify, and hold harmless" J.C. Penney from all "liabilities, damages, settlements, and claims for damages," including claims for "injury to . . . persons, . . . arising or resulting from the Work or from any actual or alleged acts, omissions, or negligence [of] Contractor

---

[14] *Owner Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.,* 59 S.W.3d 63, 68 (Tenn. 2001).

[15] *Id.; Moore Constr. Co ., Inc. v. Clarksville Dep't of Elec.,* 707 S.W.2d 1, 9 (Tenn. Ct. App. 1985); *see also Davidson & Jones Dev. Co. v. Elmore Dev. Inc., et. al,* 921 F.2d 1343 (6th Cir. 1991).

[16] *Bricks, Inc. v. BNY Trust Co. of Missouri*, 165 F. Supp. 2d 723, 726-27 (W.D. Tenn. 2001) (citing *United Am. Bank of Memphis v. Gardner*, 706 S.W.2d 639, 641 (Tenn. Ct. App. 1985)).

any Subcontractor or any Person performing any portion of the Work." (Cross-claim ¶ 3.) Elsewhere in the master services agreement, ASA Carlton agreed to maintain liability insurance in which J.C. Penney was named as an additional insured. (*Id.* ¶ 4.) Accepting as true the allegation that the subcontract incorporated these terms of the master services agreement, the indemnity clause and insurance clause of the general contract became part of the subcontract, and under Tennessee law, both writings must be construed together.[17] A reasonable inference from these allegations is that Arreola agreed to indemnify J.C. Penney and maintain general liability insurance with J.C. Penney as an additional named insured. The Court concludes then that these allegations plausibly show J.C. Penney was a third-party beneficiary of the subcontract between Arreola and ASA Carlton and that J.C. Penney has stated a claim against Arreola for breach of the subcontract.

Arreola has argued that even if some grounds for indemnification exist, the Court should not enforce the indemnity clause of the master services agreement for its indefiniteness or as void under Tenn. Code Ann. § 62–6–123. According to Arreola, Plaintiff's Complaint alleges claims against J.C. Penney for its own negligence and does not seek to hold J.C. Penney vicariously liable for the negligence of ASA Carlton and Arreola. Arreola contends that any agreement to hold J.C. Penney harmless for its own negligence is unenforceable under Tennessee law. J.C. Penney responds that the Complaint does not state a claim against it for its own negligence but only for the underlying acts of ASA Carlton and Arreola, and so Tennessee law would not preclude indemnification for these claims. At this stage of the proceedings, the Court declines to reach the issue. The parties' arguments call for the Court to construe as a matter of law the pleadings framed by Plaintiff when

---

[17] *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 525 (Tenn. 2005); *T.R. Mills Contractors, Inc. v. WRH Enter., LLC*, 93 S.W.3d 861, 870 (Tenn. Ct. App. 2002).

Arreola's Motion to Dismiss has only tested the pleadings of the Cross-claim.[18] The Motion to Dismiss is not directly addressed to Plaintiff's pleadings, and as such Plaintiff has not responded in any way to answer the arguments raised by J.C. Penney and Arreola about the nature of Plaintiff's allegations about J.C. Penney. Had J.C. Penney filed a Rule 12 motion of its own to test the sufficiency of Plaintiff's claims against it, Plaintiff would have had a full opportunity to address the question, and the issue would be ripe for the Court's consideration. Under the circumstances, the Court declines to reach the issue here and will deny Arreola's Motion to Dismiss on this question without prejudice to raise it again in a subsequent dispositive motion.

## CONCLUSION

The Court holds that J.C. Penney's Cross-claim plausibly alleges that J.C. Penney is an intended third-party beneficiary of Arreola's subcontract with ASA Carlton. Therefore, Arreola's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 13, 2014.

---

[18] The Cross-claim alleges that Plaintiff's claims against J.C. Penney fall within the scope of claims covered by the master services agreement's indemnity clause. (Cross-claim ¶¶ 9, 10.) However, this is a legal conclusion, which the Court need not accept as true for purposes of Rule 12(b)(6).